UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORNELL MAINE HEAD, JR.
# 946800

        Petitioner,               Case Number 2:21-CV-12056
                                      Hon. George Caram Steeh

    v.

BECKY CARL,

        Respondent.
_____/

### OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Cornell Maine Head, Jr., ("Petitioner"), incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, filed a *pro se* habeas corpus petition challenging his state conviction for second-degree murder, Mich. Comp. Laws § 750.317, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, two counts of possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b, and carrying a concealed weapon, Mich. Comp. Laws § 750.227.  For the reasons stated below, the petition for a writ of habeas corpus is DENIED.

- 1 -

## I.  Background

Petitioner was convicted following a jury trial in the Kalamazoo

County Circuit Court.  This Court recites verbatim the relevant facts relied

upon by the Michigan Court of Appeals, which are presumed correct on

habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v.*

*Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant shot and killed Gabriel Juarez-Montanez, the ex-
> boyfriend of defendant's girlfriend, Kelsey Boodt, in Portage,
> Michigan, on July 25, 2017. Boodt testified at trial that she had
> told defendant that Juarez-Montanez had been violent with her
> in the past and that she was afraid of him. She also testified that
> defendant said he would kill Juarez-Montanez if he ever hurt her
> again. Boodt's coworker, Denise Marie Davis, testified that in
> July of the previous year Boodt had told her, in the presence of
> defendant, that Juarez-Montanez's family was threatening her.
> According to Davis, defendant was quiet, did not say that he was
> going to kill Juarez-Montanez, and said something like, "they not
> going to do nothing [sic]." Davis also testified that, a few days
> before this conversation, Juarez-Montanez had come to her
> workplace and that her coworkers had called the police because
> they were concerned for Boodt's safety.
>
> Defendant's friend Elijah Bell and Boodt both testified that the
> shooting took place around 2:00 a.m. as they were sitting with
> defendant in a vehicle in the parking lot of his apartment
> complex, smoking marijuana. Boodt testified that she saw
> Juarez-Montanez walking toward the car "with his hands in a fist"
> like "he was going to swing on [defendant]" and warned
> defendant that Juarez-Montanez was approaching. Boodt
> testified that within "a blink of an eye," Juarez-Montanez opened
> the passenger door of the car where defendant was sitting; Boodt
> stated that it looked like Juarez-Montanez was going to hit

defendant, but she could not see if Juarez-Montanez held anything in his hand. She testified that defendant produced a firearm and fired twice. When the shooting began, Boodt ran from the car to the apartment she shared with defendant. Approximately 20 to 25 minutes later, the police forced the door of the apartment open after they knocked repeatedly and she did not answer. The police later obtained a search warrant for Boodt's apartment and seized a revolver and two different kinds of ammunition; although defendant's fingerprints were found on the revolver, a forensic technician testified at trial that the revolver was not the gun used in the shooting, nor was the ammunition found in the apartment of the same caliber as that used in the shooting. The gun used in the shooting was never recovered.

Bell testified that he saw a man he had never seen before walking rapidly up to the car and that it appeared to him that the man had something in his hands that could have been a knife or a stick. He testified that defendant appeared scared when Boodt told him it was Juarez-Montanez, that defendant asked Boodt to drive away, but that she did not do so. Bell testified that he ran from the car when Juarez-Montanez opened the front passenger door and that, although he heard the two gunshots, he did not see who fired them.

Other witnesses at trial testified to hearing two gunshots on the night in question. A forensic technician testified that gunpowder residue was found inside the car, suggesting that at least one of the shots was fired while the gun was inside the car. A forensic medical examiner testified that Juarez-Montanez had died of two gunshot wounds to the chest; one of the bullets had passed through his right hand. The examiner testified that the wound in Juarez-Montanez's right hand indicated that the gunshot causing that wound was fired from less than three feet away while Juarez-Montanez's hands were held up in front of his body.

The trial court instructed the jury on the elements of first-degree murder, second-degree murder, and voluntary manslaughter; additionally, the trial court gave an extensive self-defense

instruction. The jury convicted defendant as described. This appeal followed.

*People v. Head*, No. 346431, 2020 WL 2296875, at *1–2 (Mich. Ct. App. May 7, 2020), *lv. den.* 506 Mich. 962, 950 N.W.2d 720 (2020).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Defendant's due process rights were violated where the trial court failed to give the jury a self-defense instruction, and trial counsel didn't object to the error.

II. The Defendant's conviction of second-degree murder is against the great weight of the evidence, which entitles him to a new trial.

III. Trial counsel was ineffective for failing to suppress the fruits of the warrantless entry into the apartment, and failed to object to the introduction of evidence about bullets found inside the apartment, which were unrelated to any crime charged.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

- 4 -

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The portion of petitioner's first claim alleging instructional error was reviewed and rejected under a plain error standard because petitioner failed to preserve the issue at the trial court level.  The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted

claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).[1]

## III. Discussion

### A. Claim # 1.   The instructional error and related ineffective assistance of counsel claims.

Petitioner argues in his first claim that the judge erred in failing to instruct the jury that there is a rebuttable presumption that a defendant who uses force or deadly force had an honest and reasonable belief that imminent death or serious harm was about to occur, so as to justify the use of self-defense, where the person against whom the force was used was attempting to remove the defendant from a motor vehicle against his will. Alternatively, petitioner argues that trial counsel was ineffective for failing to request this instruction or object to the judge's failure to give this instruction.

Mich. Comp. Laws § 780.951(1) states:

[I]t is a rebuttable presumption in a civil or criminal case that an individual who uses deadly force ... has an honest and reasonable belief that imminent death of, sexual assault of, or great bodily harm to himself or herself or another individual will occur if both of the following apply:

---

[1] Respondent argues that the claim is procedurally defaulted. Petitioner argues in the alternative in his first claim that counsel was ineffective for failing to object to the judge's failure to give the jury the instruction on self-defense that petitioner argues should have been given. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of the claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

(a) The individual against whom deadly force or force other than deadly force is used ... is unlawfully attempting to remove another individual from a dwelling, business premises, or occupied vehicle against his or her will.

(b) The individual using deadly force or force other than deadly force honestly and reasonably believes that the individual is engaging in conduct described in subdivision (a).

M. Crim. JI 7.16a, provides, in relevant part, that if the jury finds both that: (1) the deceased was unlawfully attempting to remove a person from a vehicle against the person's will, and (2) the defendant honestly and reasonably believed that the deceased was unlawfully attempting to remove him from the vehicle, there is a presumption that the defendant had an honest and reasonable belief that imminent death or great bodily harm would occur. The instruction goes on to state that the prosecution may overcome this presumption by proving beyond a reasonable doubt that the defendant did not have an honest and reasonable belief that death or great bodily harm was imminent. M. Crim. JI 7.16a(1)(b).

The Michigan Court of Appeals rejected this claim, indicating that the jury was given an instruction on self-defense:

The trial court gave an extensive self-defense instruction. It explained defendant's self-defense theory of the case. It further instructed that defendant must have honestly and reasonably believed that he was in danger of being killed or seriously injured. And it instructed the jury that, in deciding if defendant's belief was

honest and reasonable, it should consider all of the circumstances as they appeared to defendant at the time. The trial court further instructed that if a person acts in lawful self-defense, that person's actions are justified and he is not guilty of murder or homicide. Moreover, defendant did not have to prove that he acted in self-defense; instead the prosecution was required prove beyond a reasonable doubt that defendant did not act in self-defense. These instructions fairly presented the issues to be tried and sufficiently protect defendant's rights.

*People v. Head*, 2020 WL 2296875, at *3.

The Michigan Court of Appeals then concluded that the giving of M.

Crim. JI 7.16a was not justified in this case as follows:

There was no evidence or testimony presented at trial that Juarez-Montanez was attempting to remove defendant from the vehicle when defendant used deadly force. Boodt testified that Juarez-Montanez approached the vehicle and opened the front passenger door; Boodt believed that Juarez-Montanez was going to strike defendant. Additionally, Bell testified that he believed Juarez-Montanez may have had a stick or knife in his hand, and that he also saw Juarez-Montanez open the front passenger door. Neither eyewitness testified to believing that Juarez-Montanez was trying to remove defendant from the vehicle, or to any actions by Juarez-Montanez that might have led to such an inference. At best, the jury could have reasonably inferred that Juarez-Montanez sought to gain access to defendant to do him harm, which was in fact the argument defense counsel made at trial—defense counsel emphasized in his closing argument that "it is undisputed that Mr. Juarez[-Montanez] was attacking whoever the passenger was" and that in the "worst case" scenario, if the jury believed that defendant had been "attacked" and had known he was "just going to get punched," defendant could only be convicted of manslaughter. Defense counsel never argued or presented evidence that Juarez-Montanez was trying to remove defendant from the vehicle. And, similarly, there was no evidence presented to allow the jury to determine that defendant honestly and reasonably

believed that Juarez-Montanez was trying to unlawfully remove him from the vehicle. Under the facts of this case, the instruction found in M. Crim. JI 7.16a(1)(b) was not applicable to any material issue, element or defense, and was not supported by the evidence. The instructions as given fairly presented the issues and sufficiently protected defendant's rights. Defense counsel was not ineffective for failing to raise a meritless argument.

*Id.,* at *4.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United States*, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury

misapplied the instruction. *Id.* at 191.  Federal habeas courts do not grant

relief, as might a state appellate court, simply because a jury instruction

may have been deficient in comparison to a model state instruction. *Estelle*

*v. McGuire*, 502 U.S. 62, 72 (1991).

Petitioner is not entitled to habeas relief on his claim because the

Michigan Court of Appeals determined, as a matter of state law, that the

evidence in this case did not support the giving of M. Crim. JI 7.16a,

because there was no testimony that the victim was attempting to forcibly

remove petitioner from the car.

The United States Supreme Court has "repeatedly held that a state

court's interpretation of state law, including one announced on direct

appeal of the challenged conviction, binds a federal court sitting in habeas

corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  State courts are the

"ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691

(1975).  What is essential to establish an element of a crime, like the

question whether a given element is necessary, is a question of state law,

of which federal habeas review is not available. *See Sanford v. Yukins*, 288

F.3d 855, 862 (6th Cir. 2002).  Likewise, "[D]ue process does not require

that a defendant be permitted to present any defense he chooses.  Rather,

states are allowed to define the elements of, and defenses to, state

crimes." *See Lakin v. Stine,* 80 F. App'x 368, 373 (6th Cir. 2003)(citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)).

Petitioner is not entitled to habeas relief because the Michigan Court of Appeals concluded that under Michigan law, the evidence did not support a rebuttable presumption that petitioner had an honest and reasonable belief that death or serious harm was imminent. *See, e.g., Taylor v. Withrow,* 288 F.3d 846, 853-54 (6th Cir. 2002).

The Court rejects the related ineffective assistance of counsel claim. To prevail on his ineffective assistance of counsel claim, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.[2]

---

[2] This Court will not repeat the *Strickland* standard when discussing petitioner's other ineffective assistance of counsel claim that he raises in his third claim, *infra.*

Petitioner claims that counsel was ineffective for failing to request an instruction that there was a rebuttable presumption that petitioner had an honest or reasonable belief that death or serious bodily harm was imminent when the victim attacked the car in which he was an occupant.  As mentioned above, the Michigan Court of Appeals concluded that petitioner was not entitled to have M. Crim. JI 7.16a read to the jury, because under Michigan law the facts did not support the giving of this instruction.

In analyzing petitioner's claim that counsel was ineffective for failing to request this instruction, this expression of state law is binding on this Court. *See Strayhorn v. Booker,* 718 F. Supp. 2d 846, 870 (E.D. Mich. 2010)(internal citations omitted).  Because the giving of M. Crim. JI 7.16a was inappropriate under state law, counsel was not ineffective for failing to request such an instruction. *Id; see also Mitzel v. Tate,* 267 F.3d 524, 538 (6th Cir.2001).  Petitioner is not entitled to relief on his first claim.

**B. Claim # 2.  The great weight of the evidence claim.**

Petitioner next contends that the verdict went against the great weight of the evidence because the preponderance of the evidence showed that petitioner acted in self-defense.

A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence.

- 12 -

*See Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *see also Nash v. Eberlin*, 258 F. App'x 761, 764, n. 4 (6th Cir. 2007)("a manifest-weight-of-the-evidence argument is a state-law argument"); *Artis v. Collins,* 14 F. App'x 387 (6th Cir. 2001)(declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence).  A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Cukaj,* 305 F. Supp. 2d at 796; *see also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003).

The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Dell,* 194 F. Supp. 2d at 648.  As long as there is sufficient evidence to convict petitioner of this crime, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. *Id.*  Other circuit courts have held that a claim that the jury verdict in a state criminal trial went against the great weight of the evidence is non-cognizable on federal habeas review. *See McKinnon v. Superintendent, Great Meadow Correctional Facility*, 422 F. App'x 69, 75

(2d Cir. 2011); *Young v. Kemp*, 760 F. 2d 1097, 1105 (11th Cir. 1985).  The

Supreme Court has never recognized a state prisoner's constitutional right

to a new trial because the verdict was against the great weight of the

evidence; petitioner's contention concerning the weight of the evidence fails

to state a cognizable federal claim. *Walker v. Curtin*, No. 1:10–cv–1267;

2011 WL 285152, *3 (W.D. Mich. Jan. 5, 2011).

To the extent that petitioner argues that the evidence was insufficient

to convict, because the prosecutor failed to rebut his self-defense claim, he

is not entitled to habeas relief.[3]

Petitioner's claim is non-cognizable on habeas review.  Under

Michigan law, self-defense is an affirmative defense. *See People v.

Dupree,* 486 Mich. 693, 704, 712; 788 N.W.2d 399 (2010).  "An affirmative

defense, like self-defense, 'admits the crime but seeks to excuse or justify

its commission.  It does not negate specific elements of the crime.'" *People*

---

[3] Respondent argues that any insufficiency of evidence claim is unexhausted; petitioner only raised a great weight of the evidence claim on his appeal of right. A habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).  A habeas petitioner's failure to exhaust his or her state court remedies is not a bar to federal habeas review of the claim "when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." *Friday v. Pitcher*, 200 F. Supp. 2d 725, 744 (E.D. Mich. 2002); 28 U.S.C. § 2254(b)(1)(A)(c).  Because the insufficiency of evidence claim lacks merit, in the interests of efficiency and justice, the Court will address petitioner's claim, rather than dismiss the petition on exhaustion grounds. *See Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999).

*v. Reese*, 491 Mich. 127, 155, n. 76; 815 N.W.2d 85 (2012)(quoting

*Dupree,* 486 Mich. at 704, n. 11).  Although under Michigan law the

prosecutor is required to disprove a claim of self-defense, *See People v.*

*Watts*, 61 Mich. App. 309, 311, 232 N.W.2d 396, 398 (1975), "[p]roof of the

nonexistence of all affirmative defenses has never been constitutionally

required...." *See Smith v. United States,* 568 U.S. 106, 110 (2013)(quoting

*Patterson v. New York*, 432 U.S. 197, 210 (1977)).  The Supreme Court

and the Court of Appeals for the Sixth Circuit have rejected the idea that

the Constitution requires a prosecutor to disprove self-defense beyond a

reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359

(1993)(Blackmun, J., dissenting)("In those States in which self-defense is

an affirmative defense to murder, the Constitution does not require that the

prosecution disprove self-defense beyond a reasonable doubt"); *Martin v.*

*Ohio*, 480 U.S. 228, 233-36 (1987); *see also Allen v. Redman*, 858 F.2d

1194, 1197 (6th Cir.1988)(explaining that habeas review of sufficiency-of-

the-evidence claims is limited to elements of the crimes as defined by state

law and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804

F.2d 50 (6th Cir. 1986)).  Therefore, "the due process 'sufficient evidence'

guarantee does not implicate affirmative defenses, because proof

supportive of an affirmative defense cannot detract from proof beyond a

reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell,* 181 F.3d 731, 740 (6th Cir. 1999). Petitioner's claim that the prosecutor failed to disprove his affirmative defense of self-defense is non-cognizable on habeas review. *Id.; Allen v. Redman,* 858 F. 2d at 1200.

Even if this Court were to determine that the petitioner's claim was cognizable, he would not be entitled to habeas relief.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

On habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).  A habeas court must defer to the fact finder for its assessment of

the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788

(6th Cir. 2003).

Under Michigan law, one acts lawfully in self-defense if he honestly

and reasonably believes that he is in danger of serious bodily harm or

death, as judged by the circumstances as they appeared to the defendant

at the time of the act. *Blanton v. Elo*, 186 F.3d 712, 713, n. 1 (6th Cir.

1999)(citing to *People v. Heflin*, 434 Mich. 482, 456 N.W.2d 10 (1990)).  To

be lawful self-defense, the evidence must show that: (1) the defendant

honestly and reasonably believed that he was in danger; (2) the danger

feared was death or serious bodily harm or imminent forcible sexual

penetration; (3) the action taken appeared at the time to be immediately

necessary; and (4) the defendant was not the initial aggressor. *See*

*Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002)(citing

*People v. Barker*, 437 Mich. 161, 165, 468 N.W.2d 492 (1991); *People v.*

*Kemp*, 202 Mich. App. 318, 322, 508 N.W.2d 184 (1993); *People v.*

*Deason*, 148 Mich. App. 27, 31, 384 N.W.2d 72 (1985)).  Under Michigan

law, a defendant is not entitled to use any more force than is necessary to

defend himself. *Johnigan,* 207 F. Supp. 2d at 609 (citing *Kemp*, 202 Mich.

App. at 322).  "[T]he law of self-defense is based on necessity, and a killing

or use of potentially lethal force will be condoned only when the killing or

use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Johnigan,* 207 F. Supp. 2d at 609 (internal citation omitted).

In the present case, there was sufficient evidence to rebut petitioner's self-defense claim.  Ms. Boodt testified that petitioner had threatened in the past to shoot the victim if he ever touched Ms. Boodt again. The medical examiner testified that the victim was shot twice within close range, with one bullet passing through his hand before entering his chest, which suggested that the victim had held his hand in front of his body to protect himself.  Police did not find any weapon or any item which looked like a weapon in the victim's possession after the shooting.  Finally, petitioner fled the scene and disposed of the gun he had used to shoot the victim.  Under the circumstances, the prosecutor presented sufficient evidence to rebut the self-defense claim.  Petitioner is not entitled to relief on his second claim.

### C. Claim # 3.  The ineffective assistance of counsel claim.

Petitioner next alleges that trial counsel was ineffective for failing to move to suppress the evidence recovered from the apartment petitioner shared with Ms. Boodt.

To prove that counsel's failure to litigate a Fourth Amendment claim competently as the principal claim of ineffectiveness, a defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence, in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Mack v. Jones,* 540 F. Supp. 2d 840, 848 (E.D. Mich. 2008).

The Michigan Court of Appeals rejected the claim at great length:

Defendant argues that the police officers' initial warrantless entry into the apartment was invalid. We disagree. Officers testified about specific and articulable facts leading them to believe that Boodt may have been in immediate need of aid. Officer Nathan Belen of the Kalamazoo Department of Public Safety testified that after officers spoke to residents of the neighborhood near where the shooting occurred, Officer Belen and several other officers were told that Boodt was Juarez-Montanez's ex-girlfriend and were told to locate her. He further testified that "the contact was to check her welfare and to make sure that she was ok." When the officers knocked and announced their presence for several minutes at Boodt's door without a response, a police sergeant on the scene made the decision to force the door open. Once inside, the officers located Boodt and confirmed that no one else was inside the apartment. This warrantless entry at least arguably qualifies for the community caretaker exception, such that defendant has not demonstrated that his counsel was not ineffective for failing to pursue a likely futile motion.

Once inside the apartment, the officers did not seize any evidence, but did note a red sweatshirt on a couch. At least one witness told police she had seen a man in a red sweatshirt entering Boodt's building with her after the shooting. On the basis of this evidence, the officers applied for and obtained a search

- 20 -

warrant. The officers then re-entered the apartment. Deferring to the decision of the magistrate as this Court must, we conclude that "a reasonably cautious person could have concluded that there was a 'substantial basis' for [a] finding of probable cause" that evidence related to Juarez-Montanez's shooting could be found inside the apartment.

Further, even if the search warrant was later deemed invalid, there was no evidence produced at trial that the investigating officers' reliance on the search warrant was objectively unreasonable or in bad faith. Defendant has not demonstrated that his counsel was ineffective for failing to pursue a motion to suppress. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy.

In any event, even assuming that defense counsel would have succeeded had he moved to suppress the revolver and ammunition found in the apartment, defendant has not shown that his counsel's failure to file such a motion, or object to the introduction of the evidence on other grounds at trial, was outcome-determinative. As discussed, the revolver was not the weapon used in the shooting, nor was the ammunition of the caliber used in the shooting. In fact, in cross-examining Boodt about the revolver, defense counsel was able to elicit testimony that was damaging to her credibility, i.e. that she had lied to police about where she had obtained the gun. Moreover, although the prosecution argued that the jury could find that defendant had possessed the revolver, based on his fingerprints and its location near personal items of defendant, it also argued that the evidence showed that defendant had possessed the handgun used to kill Juarez-Montanez. Boodt testified that she saw defendant pull a handgun from his waistband before the shooting. And the jury convicted defendant not only of murder and felon-in-possession, but of CCW; the prosecution's only argument from the evidence regarding CCW was that defendant had concealed and carried the gun used to kill Juarez-Montanez. Defendant has not demonstrated that without the evidence relating to the items found in the apartment, the outcome of the proceedings against him would have been different.

*People v. Head*, 2020 WL 2296875, at *7–8 (internal citations omitted).

Petitioner failed to show that counsel was ineffective for failing to move for the suppression of this evidence.

Although the community caretaker exception does not justify a warrantless entry or search of a residence, *See Caniglia v. Strom,* 141 S. Ct. 1596, 1598 (2021), under the emergency assistance doctrine, police officers "may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009)(quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)). The "emergency aid exception is not dependent upon the officer's subjective intent or the seriousness of the crime being investigated when the emergency arises." *Id.* (quoting *Brigham City*, 547 U.S. at 404–405). The emergency aid exception to the warrant requirement "requires only 'an objectively reasonable basis for believing,' ....that 'a person within [the house] is in need of immediate aid[,].'" *Id.* (internal quotations omitted).

In the present case, trial counsel was not ineffective for failing to move to suppress the evidence because the warrantless entry of the home was justified by the emergency aid exception to the Fourth Amendment's warrant requirement. *See, e.g., Seymour v. Walker,* 224 F.3d 542, 556 (6th

Cir. 2000)(counsel was not ineffective for failing to move to suppress the evidence gathered when the police entered defendant's apartment without a warrant immediately after the shooting of her ex-husband, as warrant was not required in response to emergency call and it did not appear that the search exceeded the officers' plain view).

Moreover, the police did not immediately seize any evidence from the residence but applied for, and obtained, a search warrant.  As the Michigan Court of Appeals reasonably concluded, there was a substantial basis for finding probable cause to believe that evidence related to the shooting would be recovered from the residence.  Because there was probable cause to support the issuance of a search warrant, counsel was not ineffective for failing to move to suppress the evidence. *See Washington v. Lee*, No. 18-5052, 2018 WL 7107545, at *2 (6th Cir. Aug. 14, 2018).  Even if the warrant was invalidly issued, this would be no basis to exclude the evidence if the officers because they acted in good faith reliance on this warrant to conduct the search. "Courts do not suppress the evidence that officers 'obtain in objectively reasonable reliance on a subsequently invalidated search warrant.'" *United States v. Soto*, 794 F.3d 635, 646 (6th Cir. 2015)(quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). Because the evidence recovered from petitioner's residence  would have

- 23 -

been admitted under the good-faith exception to the exclusionary rule,

petitioner is unable to show prejudice required for his ineffective-assistance

of counsel claim. *United States v. Soto*, 794 F.3d at 647.

Finally, as the Michigan Court of Appeals noted, petitioner is unable

to show that he was prejudiced by counsel's failure to move to suppress

the revolver and ammunition recovered from his apartment because none

of this evidence was related to the murder.  The most powerful inculpatory

evidence against petitioner was the eyewitness testimony, the medical

examiner's testimony, and petitioner's own actions in fleeing the crime

scene and discarding the murder weapon.  Counsel's failure to move for

the suppression of the revolver and ammunition seized in the apartment did

not prejudice petitioner, for purposes of his ineffective assistance of

counsel claim, because there was a large amount of additional evidence

introduced at trial to establish petitioner's guilt. *See Munson v. Kapture*,

384 F.3d 310, 316 (6th Cir. 2004).  Petitioner is not entitled to relief on his

third claim.

## IV.  Conclusion

The Court will deny the petition for a writ of habeas corpus.  The

Court will also deny a certificate of appealability to petitioner.  In order to

obtain a certificate of appealability, a prisoner must make a substantial

showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To

demonstrate this denial, the applicant is required to show that reasonable

jurists could debate whether, or agree that, the petition should have been

resolved in a different manner, or that the issues presented were adequate

to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S.

473, 483-84 (2000).  When a district court rejects a habeas petitioner's

constitutional claims on the merits, the petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the

constitutional claims to be debatable or wrong. *Id.* at 484.  "The district

court must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant."  Rules Governing § 2254 Cases, Rule

11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a

certificate of appealability because he failed to make a substantial showing

of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp.

2d 621, 629 (E.D. Mich. 2001).  The Court will also deny petitioner leave to

appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. Order

The Petition for a Writ of Habeas Corpus, a Certificate of

Appealability, and leave to appeal *in forma pauperis* are **DENIED.** The

matter is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

Dated:  August 17, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 17, 2022, by electronic and/or ordinary mail and also
on  Cornell Maine Head #946800, St. Louis Correctional
Facility, 8585 N. Croswell Road, St. Louis, MI 48880.

s/Karri Sandusky on behalf of Brianna Sauve
Deputy Clerk

---